Georgia A. Staton, Bar #004863
Ravi V. Patel, Bar #030184
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7854
gstaton@jshfirm.com
rpatel@jshfirm.com

Attorneys for Defendant Window Rock Unified School District

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kenneth Cooper,<br><br>Plaintiff,<br><br>v.<br><br>Window Rock Unified School District,<br><br>Defendant. | NO. 3:20-CV-08346-DJH<br><br>**Defendant's Motion for Summary Judgment**<br><br>**(Assigned to the Honorable Diane J. Humetewa)** |

This is an employment case. Defendant Window Rock Unified School District ("the District") moves this Court for summary judgment. Plaintiff Ken Cooper ("Cooper") has no evidence that the District discriminated or retaliated against him, or that he even had a valid <u>second</u> contract of employment, let alone that the District breached it. The undisputed evidence demonstrates that Cooper was insubordinate and was repeatedly warned that he needed to treat his supervisors and co-workers with courtesy and respect. Because he failed to do so, in February 2018 he was placed on administrative leave for the remainder of his one-year contract. The District did not offer him a contract for the following year. Cooper's breach of contract claim, related to an alleged second contract of employment, fails because he neglected to serve a notice of claim, and because the record lacks evidence that the District even offered him a contract.

## I. SUMMARY OF RELEVANT FACTS

### A. The District hired Cooper.

The District employed Ken Cooper as its Human Resources Director from August 3, 2017, through June 30, 2018. (**Ex. 1**, *Employment Contract,* at WRUSD000001; **Ex. 2**, *Cooper Deposition*, at 50:8-25). When he was hired, Cooper had more than 6 years' experience in Human Resources, and a Master's Degree in Human Resources (**Ex. 3**, *Resume* at WRUSD00009-10). Superintendent Lynnette Michalski was a member of Cooper's interview panel and recommended that the Governing Board hire Cooper. (**Ex. 2**, at 48:11-49:21; 49:25-50:6). The Governing Board accepted that recommendation, and offered Cooper a contract for the 2017-2018 school year. (**Ex. 2** at 50:8-13, 51:1-3; 51:24-52:2)

### B. Cooper Had No Right to the Renewal of his Contract.

The terms of the Contract did not give Cooper an automatic right to renewal of his employment. It gave the Governing Board discretion whether to offer Cooper employment for the following year. The Contract provided that Cooper's employment would extend beyond the contract term (ending June 30, 2018) only if the Governing Board approved a new employment contract in accordance with District Policy. (**Ex. 1**, at WRUSD00004, ¶17; **Ex. 2** at 50:8-16; 51:6-18).

### C. Cooper's Job Duties.

When he was hired as Director of Human Resources, Cooper reviewed and signed his job description which included the following responsibilities:

- To assist the Superintendent in the administration of human resources.
- To screen and interview applicants for positions along with principals, directors and other appropriate individuals
- To make recommendations to the Superintendent regarding applicants to hire, so the Superintendent could recommend candidates for hire to the Governing Board.

(**Ex. 5,** *Position Description* at WRUSD000038; **Ex. 2** at 53:23-55:9, 56:5-19; 56:24-57:1). Cooper acknowledged that the Superintendent was not obligated to accept his recommendations regarding applicants. (*Id.*)

Cooper was required to comply with the District's Code of Conduct, which stated, in pertinent part, that employees would:

- Comply with justifiable directives issued by duly recognized sources of authority; and
- Demonstrate respect, fairness and dignity when interacting with students, staff and others.

(**Ex. 6,** *Code of Conduct,* at WRUSD000041). Cooper understood this to mean that he was required to interact with staff in a respectful and dignified way, and maintain courteous and professional relationships with staff. (**Ex. 2** at 57:12-58:4).

**D. <u>December 31, 2017.</u>**

On December 31, 2017, Cooper falsely accused IT Director Sheldon Yazzie of failing to communicate with Cooper's staff about a pending software update. Cooper sent an email to Superintendent Michalski claiming that Director Yazzie "dropped the ball" by doing a systems update without notifying Human Resources, thus delaying the processing of payroll. This was not true. In fact, payroll clerk Monique Louis had been communicating with IT about the upgrade, and there was a plan to run payroll so that it would be processed on time. (**Ex. 7,** *December 31, 2017 emails,* at WRUSD000290; **Ex. 11**, *Michalski Declaration* at ¶15).

**E. <u>Cooper's aggressive January 18, 2018 – January 23, 2018 emails.</u>**

On January 18, 2018, Cooper exchanged emails with Director Yazzie about upcoming interviews HR was scheduling for an IT employee. Cooper copied two of his subordinates in the Human Resources Department on these emails. (**Ex. 2** at 99:12-17; **Ex. 8**, *January 18, 2018 emails* at WRUSD000294-295). When Director Yazzie asked to review the initial applicants to determine if he wanted to interview them or request that the position be relisted, Cooper responded:

> You do not have the autonomy to reject qualified applicants for interview. This is not about who you like or dislike, this is about legal hiring protocols. It is also not in your area of responsibility to decide whether or not to re-advertise because it is a flagrant violation to post a job and not hire without justification. **Stay in**

> **your lane Sir, please do not try to encroach in areas that are not your areas responsibility. Therefore, your request rest squarely in the domain of HR not IT. HR is charged with the hiring and vetting of applicants not the department head. I will not be transferring my responsibilities in hiring to you or anyone else. HR will follow the hiring procedures and you will not dictate HR hiring procedures.**

(**Ex. 8** at WRUSD000295 (emphasis added); **Ex. 2** at 98:15-21; 99:20-100:6).

Yazzie requested a meeting with the Superintendent and Cooper to discuss the issue at 4:00 or 4:30 pm that afternoon. (**Ex. 2** at 103:5-12; **Ex. 8** at WRUSD000294). When the Superintendent responded confirming her availability, Cooper responded:

> Such a meeting is not necessary. And there is nothing to further discuss on this matter. **I do not have the time available to waste on such an unnecessary meeting**. Just please adhere to Our [*sic*] hiring procedures.

(**Ex. 2** at 103:13-104:9; **Ex. 8** at WRUSD000294) (emphasis added). Cooper claimed that when he sent this email at 2:25 p.m., he was 18 miles away, investigating a bus accident and it was "physically impossible" to attend a 4 p.m. meeting. However, he did not provide this information in his email response. (**Ex. 2** at 106:3-11; 106:19-23; **Ex. 8** at WRUSD000294).

The Superintendent replied informing Cooper that he was required to attend the meeting, and that failing to comply would be insubordination. (**Ex. 2** at 107:8-107:20; **Ex. 8** at WRUSD000293). Cooper in return called her email **"inappropriate, out o[f] line, uncalled for and thereating [*sic*]"** (**Ex. 2** at 107:8-20; **Ex. 8** at WRUSD000293). It was only when the Superintendent insisted that he attend the meeting that Cooper finally agreed to do so. (**Ex. 2** at 108:7-21; **Ex. 8** at WRUSD000292).

On January 22, 2018, Superintendent Michalski emailed Cooper, telling him that he did not have to agree with her decisions, but since she is his supervisor, he had to follow her directives, whether he agreed with her or not. She said that:

- she could not allow the Cooper's aggressiveness in his email towards her or towards another employee.
- Cooper's inclusion of other HR employees in his emails was inappropriate.
- Yazzie, as the supervisor for the vacant IT position, should have input into the hiring of his subordinates.

- Cooper needed to show professional courtesy to herself and other district supervisors and directors and refrain from insubordinate emails.

(**Ex. 2** at 111:5-9, 112:7-11; **Ex. 9**, *January 22, 2018 email,* at WRUSD000310). Cooper conceded in his deposition that Superintendent Michalski was his supervisor, and that while he did not have to like her positions on issues, he did have to report to her and be respectful. (**Ex. 2.** at 110:15-111:6).

On January 23, 2018, however, Cooper responded to the Superintendent's email, calling it "**vitrol of workplace power.**" (**Ex. 10**, *January 23, 2018 email,* at WRUSD000312; **Ex. 2** at 113:5-10; 115:7-14). In the same email, Cooper characterized her direction "to refrain from insubordinate emails" as "**borderline tyranny**." (**Ex. 10** at WRUSD000312, **Ex. 2** at 112:22-113:2; 117:4-21). Cooper also testified that he thought the Superintendent engaged in "borderline tyranny" when she wrote, "My directive to you is to please allow Mr. Yazzie and all supervisors **the professional courtesy** to be part of the hiring process." (**Ex. 2** at 117:16-21).

Cooper selected 3 of the qualified candidates to be interviewed by the interview panel and insisted that the interviews take place in his office. After the interviews, applicant Quentin Tutt was selected for the position. (**Ex. 11**, at ¶23-24; **Ex. 12,** *Investigation Findings and Recommendation into Tech I Vacancy Hiring,* at WRUSD000366)

**F. <u>Cooper was Placed on Administrative Leave and Non-renewed</u>**

On February 14, 2018, Superintendent Michalski placed Cooper on paid administrative assignment to home, for numerous reasons including his discourteous, unprofessional and insubordinate communications with herself and others. (**Exhibit 13,** *Notice of Administrative Leave,* at WRUSD000379; **Ex. 2** at 143: 4-10; 143:14-16).

On March 27, 2018, Cooper was notified that the Superintendent intended to recommend non-renewal of his contract for the 2018-2019 school year. (**Ex. 2** at 151:15-19; **Ex. 14**, *Notice of Nonrenewal,* at WRUSD000487-488). On March 30, 2018, Cooper responded, noting that he had scheduled an interview with the EEOC. (**Ex. 15,** *March 27-30, 2018 emails,* at WRUSD000499). On April 12, 2018, Cooper was notified that the Governing Board had

decided not to reemploy him for the coming school year, and that he was to remain on administrative assignment to home. (**Ex. 16,** *Notice of Non-renewal*; **Ex. 2** at 152:8-19). Cooper's contract was not renewed. (**Ex. 2**. at 154:7-11).

Two months later, on June 14, 2018, Cooper filed his charge of discrimination with the EEOC. (**Ex. 17**, *Excerpts from EEOC Investigation File* at WRUSD525-526).

## II. THE RECORD LACKS EVIDENCE OF DISCRIMINATION

A plaintiff may prove that discrimination was the motivating factor of an adverse employment action by direct evidence[1] or by circumstantial evidence. In Count I of his Complaint, Cooper asserts that the District discriminated against him on the basis of his race. [Doc. 1 at ¶22]. Cooper has never disclosed any direct evidence of discrimination. Nor could he. (*See, e.g.,* **Ex. 17**, at WRUSD000622 (Cooper told the EEOC investigator that he had never heard Superintendent Michalski speak "in a negative way about any races")). Instead, Cooper makes a circumstantial argument: that he was treated less well than white/Anglo employees and other employees who were friends with Superintendent Michalski. (**Ex. 2** at 60:16-25; Doc. 1 at ¶15).[2]

To prove a Title VII discrimination claim by circumstantial evidence, Cooper needed evidence that: (1) he belongs to a protected class under Title VII; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees who do not belong to the same protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Cooper could show a prima facie case of discrimination, the burden of persuasion would shift to the District to articulate a legitimate,

---

[1] Direct evidence is evidence "which, if believed, proves the fact of discriminatory animus without inference or presumption." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir.2005). Direct evidence typically means "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.* The statement must "directly suggest the existence of bias" without inference. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

[2] Plaintiff makes a passing reference to gender discrimination in paragraph 15 of his complaint. To the extent that passing reference is deemed to be a gender discrimination claim, that claim fails for the same reasons as his race discrimination claim.

non-discriminatory reason for the adverse employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the District articulates a legitimate non-discriminatory reason for its action, Cooper must demonstrate that the legitimate nondiscriminatory reason is truly a pretext for unlawful discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802.

A plaintiff cannot defeat a summary judgment motion by merely arguing that the defendant's reason for the challenged employment action is not credible. *Cornwell*, 439 F.3d at 1028 n.6. He must show that a "discriminatory reason more likely motivated the employer" and must demonstrate "that the employer's proffered explanation is unworthy of credence." *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003). Nor may a plaintiff create a genuine issue of material fact by relying solely on his subjective belief that the challenged employment action was unnecessary or unwarranted. *Id.* When a plaintiff relies on circumstantial evidence to show pretext, "that evidence must be **specific and substantial** to defeat the employer's motion for summary judgment." *Id.* at 1029 (emphasis added). As shown below, Plaintiff has no such evidence.

**A. <u>The Same Actor Defense applies.</u>**

In this Circuit, "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1096 (9th Cir. 2005). For the purposes of the "same actor" defense, a short time period can be as long as 3 years. *Id.* at 1097 (finding that the same actor defense barred plaintiff's claims where there was a 3-year gap).

Here, Superintendent Michalski both recommended Cooper to the Board, and recommended his non-renewal, all within a 9-month period. The Board approved both actions. The same actor defense warrants summary judgment for Defendant. Cooper cannot make "the extraordinarily strong showing of discrimination necessary to defeat the same-actor inference." *Id.* at 1097.

**B. <u>The record is undisputed that Cooper's performance was unsatisfactory.</u>**

Cooper cannot meet the second element of a prima facie case of discrimination because the record is undisputed that his performance was not satisfactory. An employee who acts unprofessionally or violates the employer's policies is not performing to the employer's satisfaction. See *Jones v. Arizona*, 2021 WL 3144586 *2-3 (D. Ariz. July 26, 2021). In *Jones*, the Court granted summary judgment for an employer that terminated an employee who, like Cooper, was warned about his unprofessional communications with coworkers and continued to engage in such conduct anyway. This undisputed record is the same.

On January 18, 2018, Cooper rudely told Director Yazzie to "Stay in [his] lane" with regard to the hiring of an employee within the Yazzie's own IT department. Cooper's communication violated his job responsibilities to screen and interview applicants "along with principals, directors and other appropriate individuals." He then initially refused to meet with Yazzie and Superintendent Michalski to discuss the issue, telling his supervisor that he did "not have the time" for an "unnecessary meeting." When the Superintendent responded that Cooper was required to attend or he would be insubordinate, Cooper called her email "inappropriate, out o[f] line, uncalled for and thereating [*sic*]." This violated his job requirements to comply with justifiable directives issued by duly recognized sources of authority; and to demonstrate respect, fairness and dignity when interacting with others.

Superintendent Michalski responded to Cooper's January 18, 2018 emails objecting to the "level of aggressiveness" and directing him to "to refrain from insubordinate statements" and to extend professional courtesy towards her, Director "Yazzie, and all supervisors." Cooper escalated his insubordination in response, calling her requests "borderline tyranny" and a "vitriol of workplace power." Cooper testified that, in his view, his statements were respectful. (**Ex. 2**. at 109:25-110:3) This insensitive and defiant conduct was particularly unacceptable in a Human Resources Director, whose job it is to defuse and resolve interpersonal conflicts, not create them.

In contrast to the foregoing, Cooper does not have a shred of evidence that he was non-renewed because of his race (or gender). This is the first reason the District is entitled to summary judgment on the discrimination claim.

**C. The record lacks evidence that the District treated similarly situated employees more favorably than Cooper.**

For employees allegedly receiving more favorable treatment to be similarly situated, they must be similarly situated to Plaintiff in all material respects. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *Vasquez v. County of L.A.,* 349 F.3d 634, 641 (9th Cir.2004) ( "individuals are similarly situated when they have similar jobs and display similar conduct"). Employees with differing disciplinary histories or complaints against them are generally not similarly situated. *See e.g. Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1160 (9th Cir. 2010); *Campbell v. Knife River Corp.--Nw.,* 783 F. Supp. 2d 1137, 1152 (D. Or. 2011).

Cooper's complaint alleges that the District treated an "Anglo female" better than him because she allegedly was not disciplined for falsifying documents. (Doc. 1 at ¶15; **Ex. 2**. at 61:7-13). It is unclear to whom Cooper was referring in this allegation, but allegedly falsifying documents is not the same as repeatedly being insubordinate, unprofessional, and unable to work as a team. In his deposition, Cooper claimed he was referring to Stephanie Michalski, an administrative assistant to the Director of Academic Programs and the Superintendent's daughter. (**Ex. 2** at 171:16-21). But an administrative assistant is not similarly situated to a department Director, and the Human Resources Director at that.[3] Cooper also testified that Stephanie Michalski would frequently come into work late (**Ex. 2** at 72:4-16), but an administrative assistant who allegedly comes in late is not similarly situated to an HR Director who cannot act professionally or get along with people.[4] The only other person Cooper identified was middle school teacher Maura Huntington (*see* **Ex. 18**, *Plaintiff's Response to NUI No. 3*); but a middle school teacher is not similarly situated to an HR

[3] Nor had Plaintiff investigated whether Stephanie intentionally falsified documents or if discrepancies in the documentation were simply errors. (**Ex. 2**, 172:6-173:19, 173:20-175:10).

[4] Cooper was never disciplined for being late, either. Plaintiff testified that he was rarely, if ever late to work, and seldom left early. (**Ex. 2** at 72:1-73:1).

Director. Huntington's job involves teaching and interacting with children and parents, not administering human resources issues. And Huntington reports to the middle school's principal, not directly to the Superintendent. (**Ex. 11** at ¶32).

In his deposition, Cooper thought of additional District employees whom he claimed were treated more favorably than he. These included Director of Academic Programs Theresa Buchanan, Window Rock High School Principal Dan Horsley, former Human Resources Director James Gordon, and an unnamed married pair of robotics instructors. (**Ex. 2**, at 63:4-8; 67:16-22). But as the tables below demonstrate, none of these individuals had the same responsibilities as an HR Director, who is tasked with administering human resources issues and working with other Department heads on hiring issues; and none of them was accused of being unable to work cooperatively with other Department heads.

| **Plaintiff/Title** | **Primary Job Duties/Qualifications** | **Conduct** |
|---|---|---|
| Ken Cooper<br>(Human Resources Director) | Assists the Superintendent in the administration of human resources for the District<br>Works with supervisors and directors to screen and interview applicants<br>Makes recommendations to the Superintendent regarding hiring<br>Manages the workers compensation programs<br>**(Ex. 5)** | Hostile emails to IT director and to the Superintendent<br>Insubordinate conduct<br>**(See Section II(B) above)** |

| **Alleged Comparator** | **Primary Job Duties/Qualifications** | **Alleged Conduct** |
|---|---|---|
| Theresa Buchanan,<br>(Director of Academic Programs) | Manages Curriculum,<br>Administers Title I financial assistance programs,<br>Runs the District's federal grants program<br>(**Ex. 11** at ¶33) | breaking rules<br>Falsifying documents<br>(**Ex. 17** at 622) |

| Alleged Comparator | Primary Job Duties/Qualifications | Alleged Conduct |
|---|---|---|
| Dan Horsley, (Principal Window Rock High School) | Runs the Window Rock High School, Oversees school operations generally Oversees and implements the school budget Manages the allocation of supplies and equipment Supervises the teachers and administrators, Interacts with parents. (**Ex. 11** at ¶35) | Absenteeism, Not doing his job (**Ex. 2** at 64:21-65-12) |
| Unnamed Husband and Wife Robotics Team | Teaches robotics and computer skills Interacts with parents (**Ex. 11** at ¶36) | Did not get along with Superintendent Called students names (**Ex. 2** at 68:3-14) |

Former Human Resources Director James Gordon was also not similarly situated. Plaintiff claims that Gordon was unable to do his job while Human Resources Director, but he does not claim that Gordon engaged in aggressive unprofessional conduct/communications or insubordination in that role. (**Ex. 2** at 65:16-23). Cooper claims that while Gordon was principal at the primary school, he and Superintendent Michalski "never got along" and had "some very contentious meetings between the two of them." (**Ex. 2** at 65:22-25). "Having contentious meetings" is not insubordination, but even if it were, the position of principal of a primary school is not similar to the HR Director. This is another reason Cooper cannot present a prima facie circumstantial case of discrimination.

### D. <u>The District had non-discriminatory reasons for placing Cooper on administrative leave and non-renewing him.</u>

Even if Cooper were able to cobble together a prima facie case of discrimination (he cannot), his violation of the Code of Conduct and insubordinate behavior were legitimate non-discriminatory reasons for his placement on administrative leave[5] and

[5] Placement on paid administrative leave during an investigation is not an adverse employment action. *Gannon v. Potter*, 2006 WL 3422215, at *5 (N.D. Cal. Nov. 28, 2006), aff'd, 298 Fed. Appx. 623 (9th Cir. 2008) (finding that six other circuits have held similarly).

subsequent non-renewal. *See Mickealson v. Cummins, Inc.,* 792 F. App'x 438, 439 (9th Cir. 2019) ("Mickealson's failure to communicate with his supervisor as instructed qualifies as insubordination that provided Cummins with a "legitimate business reason" to terminate his employment."); *Ogunleye v. Arizona*, 66 F. Supp. 2d 1104, 1108-1109 (D. Ariz. 1999) (Insubordination and the use of insults, a harsh tone, and sarcasm each constitute legitimate, non-discriminatory reasons for the nonrenewal of an employee's contract.) Cooper cannot show that the District's conduct was pretexual. Even after his non-renewal, Cooper's insistence at his deposition that his communications were respectful demonstrated that he simply does not understand the bounds of appropriate workplace conduct. In any event, the issue is not whether Cooper thought he was being respectful; the issue is whether the record contains a scintilla of evidence of pretext. It does not. The District was not required to rehire a Director of Human Resources who was insubordinate and unable to communicate respectfully with his supervisor and other Directors in the District. This is yet another reason to grant the District summary judgment on the discrimination claim.

## III. THE RECORD LACKS EVIDENCE OF RETALIATION

In order to show a prima facie case of retaliation under Title VII, Cooper must show that (1) he engaged in protected activity, (2) the District subjected him to an adverse employment action, and (3) that retaliation was the "but-for" cause of any adverse action. *Nilsson v. City of Mesa*, 503 F.3d 947, 954 (9th Cir. 2007); *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2533 (2013). This requires proof that the alleged unlawful retaliation would not have occurred but for the District's alleged retaliatory motive. *Nassar*, 133 S.Ct. at 2533 (2013). If Cooper had sufficient evidence to show a *prima facie* case of retaliation, the burden shifts to the District to articulate a legitimate, non-retaliatory reason for its actions. *Nilsson*, 503 F.3d at 954. If the District sets forth such a reason, Cooper must submit evidence showing that the District's proffered reason is merely a pretext for a retaliatory motive. *Id.*

### A. Cooper's Participation Claim is without Merit

Title VII prohibits retaliation against an employee who participates in an

investigation, proceeding or hearing under Title VII, such as filing an EEOC charge. *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). This record cannot show such retaliation, because Cooper filed his EEOC charge on June 14, 2018, nearly 3 months **after** the District notified him that he would be non-renewed. (**Ex. 17** at 524-525). Cooper did not even notify Superintendent Michalski that he intended to bring a claim to the EEOC until **after** Michalski notified him that she was recommending his non-renewal to the Board. (*See* **Ex. 15** at WRUSD000499).

**B. Plaintiff's Opposition Claims are also meritless.**

Cooper appears to claim that the District retaliated against him for opposing various practices he deemed unlawful. To constitute protected activity under Title VII's "opposition clause," the "opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978). In addition, the employee must have a "reasonable belief" that he was opposing a Title VII violation. *Learned*, 860 F.2d at 932.

**1. Plaintiff fails to establish a protected activity for opposing "pre-selection" of employees.**

Cooper says he opposed a practice in which Superintendent Michalski allegedly pre-selected candidates to be hired. However, only preselection based on discriminatory motives violates Title VII. *Blue v. Widnall*, 162 F.3d 541, 547 (9th Cir. 1998). Cooper did not identify any "discriminatory motive." His primary concern appeared to be favoritism. (*See* **Ex. 2** at 62:18-21). Favoritism does not, itself, violate Title VII.

Only one of the employees Cooper claims the Superintendent "pre-selected" was hired while Cooper was Human Resources Director. This was the IT employee, Quentin Tutt, who was interviewed in January 2018. (*See* **Ex. 18**; at 2, *NUI No.2*). But an interview panel recommended Quentin Tutt, not the Superintendent. (**Ex. 11** at ¶22.). Three other employees Cooper named[6] were hired before he was employed by the District (**Ex. 18,** at 1-2,

[6] Theresa Buchanan, Anna Marie Perry and Stephanie Michalski

*Response to NUI No. 1*; **Ex. 2** at 142:11-14); and Leon Ben was hired *after* Cooper's non-renewal. (**Ex. 18** at 1). Consequently, Cooper could not have not opposed their hiring.

**2. Cooper's telling his fiance about her appeal rights cannot form the basis of a retaliation claim.**

Cooper says the District retaliated against him for advising his fiance, Sharon Toadecheenie, on November 20, 2017 about how to handle a non-disciplinary letter of direction she had received. Toadecheenie is an Instructional Specialist for the District. (**Ex. 2** at 73:24-74:8; 74:11-13; 75:8-12; 89:1-12). The letter of direction stated a concern that she had plagiarized a curriculum management plan. (**Ex. 19**, *Letter of Direction*). Toadecheenie told Cooper she believed she had been investigated because she had complained to Theresa Buchannan that her administrative assistant, Stephanie Michalski, failed to book travel for a conference. (**Ex. 2** at 75:22-76:12). Cooper told Toadecheenie this could be considered discriminatory treatment. (**Ex 2** at 75:8-12). Later, the Superintendent asked Cooper if he had prepared Toadecheenie's internal complaint, and he denied doing so. (**Ex. 2** at 86:20-87:6).[7] This was not protected oppositional activity as a matter of law. Cooper did not help her make a complaint, or participate in an investigation. Moreover, as Human Resources Director, Cooper should have known that the Letter of Direction was non-disciplinary, and thus he could not have formed a "reasonable belief" that this event constituted a Title VII violation.

**3. Cooper's sitting in a meeting where someone alleged she was sexually harassed cannot form the basis of a retaliation claim.**

Cooper next claims he attended a meeting where Heather Duncan accused board member Scott Tomlinson of sexually harassing her. (**Ex. 2** at 167:20-168:4). Cooper only attended the meeting and did not investigate the complaint. (**Ex. 2** at 164:15-17). Mere presence in a meeting where someone makes a sexual harassment claim is not protected opposition. Even if it were, Title VII's "opposition clause" protects only opposition to an employer's act, not an employee's act. *Silver*, 586 F.2d at 141. Finally, Cooper cannot establish

[7] To the extent that Plaintiff asserts that this is a participation claim, it fails to state a claim for the same reasons described herein.

that his presence at the meeting had any causal connection to Superintendent Michalski's recommendation that he be non-renewed.

**C. Cooper's other claims do not constitute protected activity.**

Cooper claims the District retaliated against him because he was aware of the following alleged violations of District policies by various employees:

- Benita Jay failed to do background checks for District subsidized housing, and was allowing Navajo rodeo contestants to stay in District housing at no cost. (**Ex 2.** at 154:14-156:1)
- Superintendent Michalski and Theresa Buchannan had improperly received grant management funds relating to a school improvement grant.[8] (**Ex. 2** at 154:14-156:1)

None of these claims falls within the scope of Title VII, and so they cannot support a retaliation claim. *Learned*, 860 F.2d at 932.

**D. The record lacks evidence of an adverse employment action.**

For purposes of retaliation, "an adverse employment action is any adverse treatment … based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007). While Cooper's non-renewal could be considered an adverse employment action, none of Cooper's other claims suffices as a matter of law.

Cooper says Superintendent Michalski interfered with his work by involving herself in the hiring process and by asking Stephanie Michalski to conduct a survey about FMLA leave. (**Ex. 2** at 127:15-128:25). The Superintendent's involvement in the hiring process is not an adverse employment action. As the District's top executive, the Superintendent had the right to ensure that the District's hiring process took place in accordance with her legitimate goals. *Id.* And her so-called "interference" was merely her involvement in the hiring of the IT employee in January 2018. That is not conduct "reasonably likely to deter the charging party or others from engaging in protected activity." Furthermore, with respect to the FMLA survey, Cooper's only complaint was that the survey

[8] While Plaintiff later seemed to concede that this was not a basis for retaliation, the District addresses it here out of an abundance of caution. (**Ex. 2** at 163:24-164:2).

was done by Stephanie Michalski, and not someone else. (**Ex. 2** at 134:7-11). Again, this is not conduct reasonably likely to deter anyone from engaging in protected activity. Nor can this reasonably be considered retaliation. Cooper did not even know what the survey involved. (**Ex. 2** at 133:2-13).

Cooper next says he saw text messages between Scott Tomlinson, a Board member, and another employee, Monique Louis, in which he was accused of having an inappropriate relationship with Louis. (**Ex. 2**. at 138:13-139:24). This is not an adverse employment action; it is not even an employment action. And there is no evidence that the Superintendent had anything to do with the email. This claim clearly lacks merit.

**E. Cooper's violations of the Code of Conduct and insubordination were legitimate non-discriminatory reasons for his non-renewal.**

Finally, though Cooper's non-renewal is an adverse employment action, Cooper has no evidence that any protected activity in which he engaged (there was none) was the "but for" cause of retaliation. Cooper's insubordinate and unprofessional emails violated the District's Code of Conduct, were inconsistent with his job duties, and provided a legitimate, non-discriminatory reason for his non-renewal. See *Nelson,* 83 F.3d at 1082.

Summary judgment is appropriate because Cooper did not engage in protected activity, lacks any evidence to support retaliation, and his contentious emails and insubordinate conduct amply justified his non-renewal.

## IV. COOPER HAS NO ACTIONABLE BREACH OF CONTRACT CLAIM

**A. Cooper failed to serve the District with a Notice of Claim.**

Cooper could not pursue a state law breach of contract claim against the District unless he served the Board members with a Notice of Claim within 180 days of the claim's accrual. A.R.S. §12-821.01(A). This is a mandatory prerequisite, and failure to comply bars any claim. *Salerno v. Espinoza*, 210 Ariz. 586, 588 (App. 2005); *Martineau v. Maricopa Cty.*, 207 Ariz. 332, 335, ¶¶ 15, 17 (App. 2004). Cooper admits he did not serve a notice of claim on the District's Governing Board. (**Ex. 20**, *Plaintiff's Response to Defendant Window Rock School*

*District's First Request for Admission*). The Court need look no further to grant the District summary judgment on this claim.

**B. No contract, no breach**

Cooper's breach of contract claim fails on the merits anyway. Cooper says the District offered him a contract to rehire him as Acting Superintendent. (**Ex. 2** at 177:5:13). The assertion is spurious. He admits the Board did not vote to offer him a contract, or to authorize anyone else to offer him a contract. (**Ex. 2** at 178:23-179:5). No individual Board member would have the right to make such an offer. And Cooper acknowledged that only the Board can hire District employees. (**Ex. 2** at 177:24-178:2). A contract offered without authority fails the "meeting of the minds" requirement to form a binding contract. *See Kaman Aerospace v. Arizona Bd. of Regents*, 217 Ariz. 148, 155, ¶ 29 (App. 2007) ("Public officers cannot bind the government they represent by acts outside their express authority"). Also, since Cooper never performed any services for the District under the contract, it fails for lack of consideration. The District is entitled to summary judgment on this claim, and seeks an award of attorneys' fees in defending it under A.R.S. ¶ 12-341.01 and ¶ 12-349.

**V. CONCLUSION**

For the foregoing reasons, the District respectfully requests the Court to grant it summary judgment on Plaintiff's complaint in its entirety, and to award it reasonable attorneys' fees under A.R.S. ¶ 12-341.01 and ¶ 12-349.

RESPECTFULLY SUBMITTED this 27th day of May, 2022.

JONES, SKELTON & HOCHULI, P.L.C.

By: /s/*Georgia A. Staton*
Georgia A. Staton
Ravi V. Patel
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendant Window Rock Unified School District

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May, 2022, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ *Lorraine Marques*