**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Cooper, | No. CV-20-08346-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Window Rock Unified School District, | |
| Defendant. | |

Defendant Window Rock Unified School District (the "School") has filed a Motion for Summary Judgment (Doc. 36)[1] with respect to Plaintiff Kenneth Cooper's (1) Title VII claim for employment discrimination; (2) Title VII claim for retaliation; and (3) breach of contract claim. The School also filed a Motion to Strike Plaintiff's Response ("Motion to Strike") (Doc. 38)[2] under Local Rule 56.1. The Court must decide whether a triable issue of fact remains for the jury to resolve Plaintiff's three claims. For the following reasons, the Court denies the School's Motion to Strike but grants its Motion for Summary Judgment as to all three of Plaintiff's claims.

**I.   Background**

Below is a timeline of the relevant events that transpired during Plaintiff's employment at the School as well as a summary of the present matter.

/ / /

---

[1] The matter is fully briefed. Plaintiff filed an untimely Response (Doc. 37) and the School filed a Reply (Doc. 39).

[2] Plaintiff has not filed a response, and the time to do so has passed. *See* LRCiv. 7.2(c).

### A. Plaintiff's Employment at the School

#### 1. Plaintiff Was Hired by the School

In August 2017, Plaintiff Kenneth Cooper ("Plaintiff") was hired by the School to work as the Human Resources ("HR") Director. (Doc. 36-2 at 2–9). The School Superintendent Lynnette Michalski (the "Superintendent") was a member of Plaintiff's interview panel and recommended to the School's Governing Board (the "Board") that Plaintiff be hired. (*Id*. at 17–18, 127).

Plaintiff's "Professional Employee Certified and Non-Certified Contract" ("Employment Contract") provided a term from August 3, 2017, through June 30, 2018. (*Id*. at 2, 6). Section 10 of the Employment Contract provided that "nothing in [the] Contract provides . . . any legitimate expectation of renewal of the contract beyond the term of the Contract." (*Id*. at 4, 8). The Superintendent signed off on Plaintiff's Employment Contract. (*Id*. at 5, 9).

#### 2. Plaintiff's Then-Fiancé is Investigated

In or around November 2017, Ms. Toadecheenie—another School employee who happened to be Plaintiff's fiancé at the time (*Id*. at 37, lns. 6–8)—complained about her administrative assistant, Ms. Michalski (Docs. 36 at 14; 36-2 at 39)—who happened to be the Superintendent's daughter. (Docs. 36 at 9, lns. 18; 36-2 at 82, lns. 20–21). Ms. Toadecheenie's complaint was that Ms. Michalski had failed to book various employees' travel arrangements for a conference. (Docs. 36 at 14; 36-2 at 38–39).

Later, Ms. Toadecheenie was investigated for accusations that she plagiarized a curriculum management plan. (Doc. 36-2 at 39). It appears the School sent Ms. Toadecheenie a "Letter of Notice to Impose Discipline" following the investigation, which she appealed.[3] Thereafter, Ms. Toadecheenie received a "Letter Re Findings and Decision NOT to Discipline and Issue Letter of Directive" from the School (*Id*. at 185–186) detailing

---

[3] According to the list of exhibits in Plaintiff's deposition, Plaintiff was provided with the (1) "Letter of Notice to Impose Discipline" sent to Ms. Toadecheenie; (2) Ms. Toadecheenie's "Appeal against Written Notice to Impose Discipline;" and (3) the "Letter Re Decision not to Discipline" sent to Ms. Toadecheenie. (Doc. 36-2 at 12). However, the School has only provided a copy of the "Letter Re Decision not to Discipline" with its Motion for Summary Judgment. (*See id*. at 185–86).

the final results of the investigation.

Ms. Toadecheenie believed the School investigated her because she complained about the Superintendent's daughter. (Docs. 36 at 14; 36-2 at 39). Plaintiff advised Ms. Toadecheenie that "this could be considered discriminatory treatment against her" and provided her with information on how to file a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Docs. 36-2 at 39; 1 at ¶ 8). However, Ms. Toadecheenie did not file an EEOC complaint or lodge an EEOC investigation. (Doc. 36-2 at 39, lns. 19–25). The Superintendent later summoned Plaintiff to her office and inquired whether Plaintiff helped Ms. Toadecheenie write her complaint and appeal, which Plaintiff denied. (*Id*. at 42–43, 128).

### 3.    Plaintiff Disapproved of the School's Hiring Process

On January 18, 2018, Plaintiff exchanged emails with the Information Technology ("IT") Director regarding the hiring process for a new IT Specialist. Specifically, Plaintiff disagreed with the IT Director on who possessed the authority to select candidates and the location for the interviews. (*Id*. at 117–20). The Superintendent requested Plaintiff and the IT Director meet in her office to resolve the dispute, but Plaintiff declined to attend because he thought "such a meeting [was] not necessary." (*Id*. at 117). The Superintendent cautioned Plaintiff that his failure to meet would "be an act of insubordination." (*Id*.)

### 4.    Plaintiff Was Not Offered a Renewed Position

On February 14, 2018, the Superintendent placed Plaintiff on paid administrative leave "so that the [School] may investigate alleged violations of [the School's] Policies and Regulations." (*Id*. at 149). On March 27, 2018, the Superintendent gave Plaintiff notice of her intent to recommend to the Board that his Employment Contract should not be renewed. (*Id*. at 151–52). The notice detailed the ways in which Plaintiff allegedly violated the School's Policies and Regulations and provided Plaintiff with the option to resign from his position. (*Id*.). Plaintiff declined to resign, and on April 12, 2018, the Superintendent gave Plaintiff notice of the Board's decision not to reemploy him. (*Id*. at 160).

On June 14, 2018, Plaintiff filed a charge of employment discrimination with the

EEOC on the basis of race, sex, and retaliation. *See* EEOC Charge No. 540-2018-02012; (*see also* Doc. 36-2 at 162–176). The EEOC ultimately dismissed Plaintiff's charge. (Doc. 36-2 at 166).

### B. The Plaintiff's Complaint

In December 2021, Plaintiff filed a Complaint (Doc. 1) alleging the following claims against the School: Count I for violation of Title VII on employment discrimination and retaliation grounds; and Count II for breach of contract. (*Id*. at ¶¶ 18–29). Plaintiff alleges the School discriminated against him based on his race when it declined to renew his Employment Contract while treating similarly situated employees more favorably than him. (*Id*. at ¶ 15). Plaintiff also alleges that, by not renewing his Employment Contract, the School retaliated against him for (1) assisting Ms. Toadecheenie with her internal investigation; and (2) opposing the School's hiring processes and unlawful employment practices. (*Id*. at ¶¶ 11–14). Last, Plaintiff claims the School had an agreement with Plaintiff to re-hire him as acting superintendent and breached this contract. (*Id*. at ¶¶ 16–17).

The Court will first consider the School's Motion to Strike to cure any procedural deficiencies relating to its Motion for Summary Judgment. The Court will then consider the merits of the School's Motion for Summary Judgment.

### II. The School's Motion to Strike

The School requests the Court to strike Plaintiff's Response to its Motion for Summary Judgment because it was not timely filed under the Federal and Local Rules of Civil Procedures. Plaintiff was allowed "thirty (30) days after service within which to serve and file a responsive memorandum in opposition" to the School's Motion for Summary Judgment. LRCiv 56.1(d). Plaintiff thus had until June 27, 2022, to file a response, but did not do so until July 8, 2022.

In cases where a party misses a filing deadline, Federal Rule of Civil Procedure 6(b) "giv[es] wide discretion to the court to enlarge these time limits or revive them after they have expired[.]" Fed. R. Civ. P. 6(b) (advisory committee note, 1946); *see also Wilson v.*

*GMAC Mortg. LLC*, 2012 WL 780813, at *3 (D. Ariz. Mar. 8, 2012). "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). The determination of whether neglect is excusable is an equitable one that depends on the following four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000).

Courts in this district have reasonably inferred excusable neglect even in instances where the untimely filing party made no attempt to justify its untimeliness.[4] Moreover, "[s]everal district courts in this Circuit have considered untimely filings in addressing the merits of a motion when no prejudice resulted to the opposing party and the failure to timely file was based on negligence or carelessness rather than willful or deliberate conduct." *Samadi v. Quality Furniture, LLC*, 2013 WL 12095673 (D. Ariz. Dec. 10, 2013).[5]

Here, Plaintiff has not filed any Response to the School's Motion to Strike or otherwise attempted to justify his untimeliness. However, the School has not set forth evidence showing it was prejudiced because of the eleven day filing delay, or that Plaintiff acted in bad faith or willful or deliberate conduct. (*See* Doc. 38 at 1). To groundlessly strike Plaintiff's Response and grant the School summary judgment on procedural grounds would contravene public policies favoring resolution of cases on their merits. *Samadi*, 2013 WL 12095673, at *1.

Thus, the Court infers that Plaintiff's eleven day delay was excusable neglect under

---

[4] *See, e.g.*, *Samadi v. Quality Furniture, LLC*, 2013 WL 12095673 (D. Ariz. Dec. 10, 2013) (considering a day late filing despite no justification); *see also, e.g.*, *Wilson v. GMAC Mortg. LLC*, 2012 WL 780813 (D. Ariz. Mar. 8, 2012) (considering a two-week late filing despite no justification from the untimely party).

[5] *See also, e.g.*, *Brandon v. Rite Aid Corp., Inc.*, 408 F. Supp. 2d 964, 967 (E.D. Cal. 2006) (considering untimely documents because "there [was] no danger of delay or prejudice"); *see also, e.g.*, *Clark v. Small*, 2010 WL 935675, at *1 (S.D. Cal. Mar. 15, 2010) (same); *see also, e.g.*, *Travelers Indem. Co. v. Crown Corr, Inc.*, 2011 U.S. Dist. LEXIS 148529 (D. Ariz. Dec. 27, 2011) (same).

Federal Rule of Civil Procedure 6(b) and denies the School's Motion to Strike. The Court will proceed to consider the merits of the School's Motion for Summary Judgment.

### III. The School's Motion for Summary Judgment

The School urges the Court to grant it summary judgment on Plaintiff's: (1) Title VII claim for racial discrimination; (2) Title VII claim for retaliation; and (3) breach of contract claim. Plaintiff argues his claim for racial discrimination survives summary judgment, but makes no argument defending his claims for retaliation or breach of contract. The Court will first set forth the standard of review before considering each of Plaintiff's three claims.

#### A. Summary Judgment Standards

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Celotex Corp.*, 477 U.S. at 324, (holding the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial"). The evidence of the non-movant is "to be

believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

### B. Plaintiff's Employment Discrimination Claim

Plaintiff's first Title VII claim is for employment discrimination. Title VII's anti-discrimination provision makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "In reviewing motions for summary judgment in the employment discrimination context, a court must 'zealously guard[ ] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.'" *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004)) (alterations in original).

Plaintiff alleges the School discriminated against him on the basis of his race when it did not renew his Employment Contract. (Doc. 1 at ¶¶ 15, 18–21). Plaintiff relies on a disparate treatment theory and claims "there were several individuals that were Anglo, white folks, that were treated better under [the Superintendent] than Plaintiff." (Doc. 37 at 4). Plaintiff further argues he was subject to discrimination via a hostile work environment.

The School contends there is no evidence it racially discriminated against Plaintiff, it is undisputed that his performance was unsatisfactory, and the same actor inference applies to negate any discriminatory intent on its behalf. (Doc. 36 at 6–8). The School also asserts that Plaintiff's attempts at comparing his treatment to Anglo employees fail because they are not similarly situated. (*Id.* at 9–11). Last, the School argues Plaintiff cannot argue a hostile work environment theory because he did not plead such a claim in

his Complaint.  (Doc. 39 at 1–2).  The Court will analyze Plaintiff's disparate impact and hostile work environment theories in turn.

### 1.     Racial Discrimination

As mentioned, Plaintiff relies on a disparate treatment theory to argue the School racially discriminated against him. A person suffers "disparate treatment" in their employment "when he or she is singled out and treated less favorably than others similarly situated on account of race." *McGinest*, 360 F.3d at 1121 (internal quotations omitted).

The Court's analysis of Title VII racial discrimination claims involves a three-step framework, commonly referred to as the *McDonnell Douglas* framework.  411 U.S. 792, 802–04 (1973); *see, e.g., Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010); *see also, e.g.*, *McGinest*, 360 F.3d at 1122 n.16.  First, Plaintiff must meet its initial burden to establish a racial discrimination claim by either (1) making a *prima facie* case under *McDonnell Douglas*; or (2) meeting the usual standard of proof under Rule 56(c). *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  Under either approach, Plaintiff must produce some evidence suggesting that the School's non-renewal of Plaintiff's Employment Contract was "due in part or whole to discriminatory intent[.]" *Weil*, 922 F.3d at 1002 n.7 (quoting *McGinest*, 360 F.3d at 1123).

At the second step, "[t]he burden of production, but not persuasion" shifts to the School "to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000).  If the School does so, then the presumption of discrimination "drops out of the picture." *McGinest*, 360 F.3d at 1123 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). Third, the burden shifts back to Plaintiff to show the School's articulated reason is pretextual. *McGinest*, 360 F.3d at 1122 n.16

### a.     Plaintiff Cannot Establish a *Prima Facie* Case Under the *McDonnell Douglas* Framework

To establish a *prima facie* case for racial discrimination under *McDonnell Douglas*, Plaintiff must show: (1) he belongs to a class of persons protected by Title VII; (2) he

performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) the School treated him differently than a similarly situated employee who does not belong to the same protected class, i.e., who is not African American. *Cornwell*, 439 F.3d at 1028 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). This showing "creates a presumption that the plaintiff's employer undertook the challenged employment action because of the plaintiff's race." *Id*.

Here, under the first element, it is undisputed Plaintiff is an African American man and a member of a protected class. (Docs. 1 at ¶ 19; 10 ¶ 19). It is also undisputed that Plaintiff's Employment Contract was not renewed for the 2018–2019 school year (Docs. 1 at ¶14; 10 at ¶ 14), which Plaintiff characterizes as the adverse employment action under element three. *See Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 980 (D. Ariz. 2017) (finding that non-renewal can be adverse employment action even though school administrators are not entitled to a renewal of their contracts under Arizona law). Thus, the parties are in dispute over the second and forth elements—that is, whether Plaintiff performed his job satisfactorily[6] and whether the School treated Plaintiff differently than non-African American employees that were similarly situated to Plaintiff.

### i.     Job Performance

The second element requires Plaintiff to show he satisfactorily performed his duties as HR Director. The School argues Plaintiff did not because of his unprofessional conduct against the IT Director and Superintendent in January 2018. The IT Director had requested to review the IT Specialist applications and to change the location of the interview. (Doc. 36-2 at 119). In response Plaintiff sent the following email while including other coworkers on the email thread:

> You do not have the autonomy to reject qualified applicants for interview.
> This is not about who you like or dislike, this is about legal hiring protocols.
> It is also not in your area of responsibility to decide whether or not to re-advertise because it is a flagrant violation to post a job and not hire without

---

[6] Although the School appears to admit in its Answer that Plaintiff performed his job duties at a satisfactory level (Docs. 1 at ¶ 7; 10 at ¶ 7), the School argues the opposite in its Motion for Summary Judgment. (Doc. 36 at 8).

- 9 -

>   justification. Stay in your lane Sir, please do not try to encroach in areas that are not your areas responsibility. Therefore, your request rest squarely in the domain of HR not IT. HR is charged with the hiring and vetting of applicants not the department head. I will not be transferring my responsibilities in hiring to you or anyone else. HR will follow the hiring procedures and you will not dictate HR hiring procedures.

(*Id*. at 118). The Superintendent objected to Plaintiff's level of aggression and noted his insubordination when he refused to meet with her and the IT Director about the matter.

Plaintiff does not dispute that the event happened. Plaintiff instead argues the IT Director's requests were outside of the HR hiring protocol and "could border an unfair hiring practice and or procedure." (*Id*.) Plaintiff further claims he thought his responses were respectful and that his "fair open dialogue of informing [the Superintendent] of what's wrong" was misconstrued as insubordinate emails. (*Id*. at 124). Plaintiff characterized the Superintendent's conduct towards him as threatening and "borderline tyranny (an act of cruel, unreasonable, or arbitrary use of power or control attached to ones employment)." (*Id.*)

The School cites *Jones v. Arizona* for the proposition that an employee who acts unprofessionally or violates the employer's policies is not performing to the employer's satisfaction. 2021 WL 3144586, at *2–3 (D. Ariz. July 26, 2021). But *Jones* is distinguishable because the employer there had provided evidence of the plaintiff's unprofessionalism over the course of five years before the plaintiff was terminated. The employer also put the plaintiff on notice that if his performance did not improve, he would be terminated. *Id*. at *3. Here the only evidence the School points to as Plaintiff's unsatisfactory performance is his allegedly aggressive emails from January 2018. (Doc. 36 at 8). Moreover, the Superintendent immediately placed Plaintiff on administrative leave for the remainder of his term before giving him notice of her intent not to recommend him for renewal. Under *Jones*, this evidence alone is insufficient for the Court to find Plaintiff did not perform to the School's satisfaction.

Further, evidence of Plaintiff's alleged unprofessionalism and aggression is for the

jury to weigh. Plaintiff otherwise states he was qualified for the HR Director position and this is supported by his resume and employment application. (Doc. 36-2 at 93–106). Plaintiff does not explicitly identify facts in his Complaint or Response to prove he performed his job satisfactory; however, there is some evidence that infers he did. For example, the parties' provided emails showing that Plaintiff proposed legal hiring procedures to the School because there were none in place at the time, which the Superintendent and principals approved. (*Id*. at 124, 137). It also shows that Plaintiff developed various "HR Forward Moving Initiatives" with target completion dates in order to carry out his duties as HR Director. (*Id*. at 138).

In sum, the record as a whole reflects there is a genuine dispute of material fact as to whether Plaintiff performed his job satisfactorily. A reasonable jury could find that he did despite an instance of questionable communication.

### ii.     **Treatment of Similarly Situated Employees**

The fourth element requires Plaintiff to show the School treated him differently than similarly situated, non-African American employees. Plaintiff argues the following five Anglo employees engaged in similar or worse conduct than Plaintiff's alleged unprofessionalism, yet were treated more favorably than him:

(1)  The former HR Director allegedly could not carry out his duties. Instead of being disciplined, he was transferred to serve as the principal of the primary school. (*Id*. at 32).

(2)  The Director of Academic Programs allegedly falsified documents and broke rules but was not disciplined. (*Id*. at 27).

(3)  A principal allegedly engaged in absenteeism and failed to do his job. Instead of being disciplined, he was given supplemental support to learn how to manage his duties. (*Id*. at 31–32).

(4)  A robotics teacher allegedly used racially charged remarks towards students and other coworkers and was known to have outbursts, but was not disciplined. (*Id*. at 34).

(5)  An administrative assistant, who was also the Superintendent's daughter, allegedly came into work late, left work early, and failed to carry out her

duties to manage travel for conferences, but was not disciplined. (*Id*. at 35). It is undisputed that these employees do not belong to the same protected class as Plaintiff. However, the School argues these employees are improper comparators because none are similarly situated to Plaintiff.

"[E]mployees are similarly situated to the plaintiff when they 'have similar jobs and display similar conduct.'" *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011) (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)). The employees' roles must be similar in material respects, but need not be identical. *Id*. Additionally, the employees must "engage in problematic conduct of comparable seriousness." *Vasquez*, 349 F.3d at 641. Whether employees are similarly situated is ordinarily a question of fact because materiality depends on the context of the case. *See Fried v. Wynn Las Vegas, LLC*, 2021 WL 5408678, at *1 (9th Cir. Nov. 18, 2021); *see also Hawn*, 615 F.3d at 1157. However, summary judgment is proper where a plaintiff fails to provide sufficient comparators. *See Hawn*, 615 F.3d at 1158.

The School argues the above five employees are not similarly situated as Plaintiff for three reasons: (1) some do not have the same supervisor as Plaintiff; (2) none have the same responsibilities as an HR Director; and (3) none were accused of engaging in aggressive, unprofessional conduct and communications or insubordination. (Docs. 36 at 10; 39 at 3).

First, it would be error for this Court to impose a strict "same supervisor" requirement among similarly situated employees. *Hawn*, 615 F.3d at 1157. Second, the comparators need not have identical responsibilities as Plaintiff to be considered similarly situated, as this would be a hard burden to meet given there is only one HR Director position. It is unlikely that a robotics teacher or an administrative assistant is similarly situated to an HR Director. *Vasquez*, 349 F.3d at 641 ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."). However, the remaining three roles—a former HR Director (an identical comparison), a Director of Academic Programs, and a principal—are supervisory administrative roles that are

- 12 -

arguably similar in material respects to that of an HR Director.

Nonetheless, the Court agrees that these remaining three comparators are improper because none of them "engage[d] in problematic conduct of comparable seriousness." *Id*. An employee's general inability to do their job or falsification of documents is far from similar to Plaintiff's acts of aggressive, unprofessional conduct and communications or insubordination. Thus, Plaintiff fails to show the employees were similarly situated because they did not engage in comparable conduct. *Hawn*, 615 F.3d at 1158.

The Court therefore finds that Plaintiff has failed to establish a *prima facie* case for discrimination under *McDonnell Douglas*. Nonetheless, because Plaintiff's burden of proof is incredibly low at this first step, *Chuang*, 225 F.3d at 1124, and because "[t]he concept of 'similarly situated' employees may be relevant to both the first and third steps of the *McDonnell Douglas* framework[,]" the Court will continue its analysis of Plaintiff's discrimination claim. *Hawn*, 615 F.3d at 1158; *see also Enriquez v. City of Scottsdale*, 2022 WL 1773829, at *6 (D. Ariz. May 31, 2022).

### b. The School has Provided a Legitimate, Nondiscriminatory Explanation

Moving to the second step of the *McDonnell Douglas* framework, the burden of production shifts to the School to provide a legitimate, nondiscriminatory reason for Plaintiff's nonrenewal. *Chuang*, 225 F.3d at 1123–24. As mentioned, the School argues it did not renew Plaintiff's employment due to his unprofessional, aggressive communications with the Superintendent and IT Director in January 2018. *See supra* Section III.B(1)(a)(i). The record indeed reflects that Plaintiff engaged in such conduct. (Doc. 36-2 at 117–20). Therefore, the School has sufficiently shown a nondiscriminatory explanation for not renewing Plaintiff's Employment Contract.

The School also asserts there is an inference of nondiscriminatory intent because the Superintendent recommended Plaintiff's hiring and nonrenewal. (Doc. 36 at 7). "Where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that

there was no discriminatory action." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996) (denying summary judgment under the same after inference when a supervisor hired an employee and then fired her a year later). Although this same-actor inference was phrased in terms of "hiring" and "firing," the Ninth Circuit has applied the inference when the same decisionmaker makes similarly negative employment actions. *See, e.g.*, *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005) (applying the defense when the same decisionmaker demoted the plaintiff to a lesser role) (citing *Hartsel v. Keys*, 87 F.3d 795, 804 n.9 (6th Cir. 1996) (applying the same-actor inference where the same decisionmaker had not hired the plaintiff but had previously promoted her)).

The Court finds *Crudder v. Peoria Unified Sch. Dist. No. 11* instructive. 468 F. App'x 781 (9th Cir. 2012). There, an Arizona district court applied the same-actor inference when a school superintendent initially recommended to the school district governing board that the plaintiff be promoted to a principal position, but then later rescinded his recommendation. *Crudder v. Peoria Unified Sch. Dist. No. 11*, 2010 WL 11523855, at *11 (D. Ariz. Dec. 21, 2010), *aff'd*, 468 F. App'x 781 (9th Cir. 2012). The Ninth Circuit affirmed the application of the inference. *Crudder*, 468 F. App'x at 783. The present case presents a nearly identical fact pattern. The Superintendent was the same decisionmaker who recommended to the Board both Plaintiff's hiring and nonrenewal within a nine month period. (Doc. 36 at 7). Thus, the same-actor inference applies here to negate any discriminatory intent behind Plaintiff's nonrenewal.

The Ninth Circuit treats the same-actor inference as "neither a mandatory presumption . . . nor a mere possible conclusion for the jury to draw[]. Rather, it is a 'strong inference' that a court must take into account on a summary judgment motion." *Coghlan*, 413 F.3d at 1098 (citing *Bradley*, 104 F.3d at 271).

### c.   **Plaintiff Cannot Show Evidence of Pretext**

At the last step of the framework, the burden shifts back to Plaintiff to prove that the School's legitimate, nondiscriminatory reason is actually a pretext for racial

discrimination. *See McGinest*, 360 F.3d at 1123; *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1067 (9th Cir. 2004). Ordinarily, Plaintiff would have to produce "specific and substantial" evidence of intentional discrimination to defeat the School's motion for summary judgment. *Coghlan*, 413 F.3d at 1096. However, when faced with the same-actor inference, Plaintiff's burden of proof is especially steep as he must make "an extraordinarily strong showing of discrimination" to survive summary judgment. *Blair v. Shulkin*, 685 F. App'x 587, 587 (9th Cir. 2017) (citation omitted).

To prove pretext, Plaintiff reiterates his argument that non-African American employees were not disciplined to the same extent as he was even though they engaged in similar or worse conduct. (Doc. 37 at 10). Indeed, "[a]n employer's more favorable treatment of similarly situated employees can be evidence of pretext[.]" *Smith v. Gardiner*, 362 F. App'x 822 (9th Cir. 2010) (citing *Vasquez*, 349 F.3d at 641). But as explained above, Plaintiff has failed to offer evidence of a sufficient comparator that is similarly situated to him. *See supra* Section III(B)(1)(a)(ii).

The heighted burden created by the same-actor inference further renders Plaintiff's discrimination claim incurable. *See Enriquez*, 2022 WL 1773829, at *8 ("Plaintiff's failure to provide the Court with similarly situated individuals would be fatal to Plaintiff's discrimination claim even without the same-actor inference.") (citing *Hawn*, 615 F.3d at 1158) (affirming summary judgment where the Plaintiff failed to provide sufficient comparators). The Court therefore finds that Plaintiff has failed to establish pretext. Consequently, his claim that the School racially discriminated against him by not renewing his Employment Contract fails.

In sum, Plaintiff cannot establish a *prima facie* case for racial discrimination under the *McDonnell Douglas* Framework because he fails to identify a non-African American, similarly situated employee treated more favorably. The School has responded with a legitimate, non-discriminatory explanation for Plaintiff's nonrenewal that is also supported by the same-actor inference, which further negates discriminatory intent. Plaintiff cannot disprove the School's explanation as pretextual for the same reasons he cannot establish a

*prima facie* case. Plaintiff's disparate treatment theory for racial discrimination thus fails.

## 2. Hostile Work Environment

Plaintiff also raises a hostile work environment theory to argue the School racially discriminated against him. (Doc. 37 at 2–3). He does so for the first time in his Response. The School argues Plaintiff cannot argue a hostile work environment theory because he did not plead such a claim in his Complaint. (Doc. 39 at 1–2).

Indeed, "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (internal citation and quotation omitted). Although the anti-discrimination provision of Title VII "encompasses the creation of a hostile work environment [because it] violates Title VII's guarantee of the right to work in an environment free from discriminatory intimidation, ridicule, and insult[,]" Plaintiff did not allege so in his Complaint. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (internal quotations omitted). The Court therefore finds Plaintiff's Complaint cannot be plausibly construed as stating a hostile work environment claim.

Regardless of this pleading deficiency, the record plainly shows Plaintiff cannot establish he was subjected to a hostile work environment on the basis of his race. To survive summary judgment, Plaintiff would have to show a genuine factual dispute exists as to "[1] "whether a reasonable African-American man would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment; and [2] whether [the School] failed to take adequate remedial and disciplinary action." *McGinest*, 360 F.3d at 1112 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1462–63 (9th Cir. 1994)). Here, Plaintiff relies exclusively on insufficient evidence that similarly situated employees apart from his protected class were treated more favorably. (Doc. 37 at 3–6). Such evidence is improper to support a hostile work environment and, as explained above, Plaintiff has failed to identify any sufficient comparators. *See supra* Section III(B)(1)(ii).

In sum, Plaintiff's cannot rely on a disparate impact theory or hostile work

environment theory to sustain a racial discrimination claim. The Court will thus enter summary judgment in Defendant's favor as to Plaintiff's first Title VII claim.

### B. Plaintiff's Retaliation Claim

Plaintiff's second Title VII claim is for retaliation. Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because he has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing" or "opposed" a practice that Title VII forbids. *See* 42 U.S.C. § 2000e–3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–60 (2006); *see also Scott v. Mabus*, 618 F. App'x 897, 901 (9th Cir. 2015).

To establish a retaliation claim, Plaintiff must prove that: "(1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) a causal relationship existed between the two." *Fried*, 2021 WL 5408678, at *2 (citing *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013)). Although the School concedes that Plaintiff's nonrenewal could be considered an adverse employment action under element two, it argues summary judgment is proper because Plaintiff cannot show he engaged in protective activity as a matter of law. (Doc. 36 at 15).

Plaintiff does not address Defendant's retaliation arguments in his Response or otherwise explain how he meets the three elements for a Title VII retaliation claim. In his Complaint, Plaintiff appears to claim the following actions are considered protective activity that prompted the Superintendent to retaliate against him:

(1) his "assisting another employer[, Ms. Toadecheenie,] with obtaining information on how to file a complaint with the EEOC"

(2) his opposition of the Superintendent's practice of pre-selecting employees, before the application process "because he thought it was unlawful."

(Doc. 1 at ¶¶ 8, 11, 12, 15).

As to Plaintiff's participation claim, a protected participation activity is when an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e–3(a). For example, "[f]iling

an internal complaint pursuant to an established reporting procedure, raising concerns in a discussion with a human-resources representative, [and] filing an EEOC complaint are all protected activities." *Archuleta v. Corr. Corp. of Am.*, 829 F. App'x 242, 243 (9th Cir. 2020).

First, Plaintiff cannot rely on his or Ms. Toadecheenie's involvement with the EEOC to establish protective activity. Plaintiff filed an EEOC complaint *after* his nonrenewal, so this participation cannot support a retaliation claim. *Scott*, 618 F. App'x at 901 (finding no protective activity when the plaintiff did not contact the EEOC until after his termination). Furthermore, it is undisputed that Ms. Toadecheenie did not actually file an EEOC complaint or lodge an EEOC investigation. (Doc. 36-2 at 39 ln. 19–25). Plaintiff merely provided her with information on *how to file* a hypothetical complaint with the EEOC. (Docs. 36-2 at 39; 1 at ¶ 8). Even so, such assistance is within the purview of Plaintiff's duties as HR Director and does not constitute protective activity. (Doc. 36-2 at 108) (HR Director essential duties are to "keep[] current of governmental statute and regulations . . . and advise[] colleagues and others accordingly"); *see, e.g*, *Kepilino v. Hawaii*, 2013 WL 5817563, *2 (D. Haw. Oct. 29, 2013) (a plaintiff who helped another employee file an EEOC charge did not engage in protective activity because plaintiff "was simply doing her job").

Second, Plaintiff cannot rely on Ms. Toadecheenie's internal investigation by the School to establish protected participation activity. Plaintiff does not claim that he was involved in her investigation, and concedes that he did not help her write any of the related investigation documents. (Doc. 36-2 at 41–42). Plaintiff thus fails to show he engaged in any protective activity on participation grounds.

As to Plaintiff's opposition claim, "[a]n employee who engages in a protected opposition activity must indicate that his opposition is on the basis of a protected ground." *Scott*, 618 F. App'x at 901. Here, Plaintiff simply states that the Superintendent's practice of pre-selecting employees before the application process is, in his opinion, "unlawful." (Doc. 1 at ¶ 12). He does not elaborate how or why he thought the practice is unlawful and

certainly did not express that his belief was based on a specific protected ground. Nor does the record reflect that Plaintiff had a "reasonable belief that the employment practice [he] protested was prohibited under Title VII" specifically. *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). Thus, Plaintiff's opposition did not constitute a protected opposition activity. *Scott*, 618 F. App'x at 901.

In sum, it is undisputed that Plaintiff did not engage in a protected activity that would support a retaliation claim. Nor does Plaintiff argue otherwise in his Response. The Court will thus enter summary judgment in the School's favor as to Plaintiff's second Title VII claim.

### C. Plaintiff's Breach of Contract Claim

Plaintiff's last claim is that the School breached its agreement with Plaintiff to re-hire him as acting superintendent. (Doc. 1 at ¶ 16–17). A.R.S. § 12–821.01 governs the viability of Plaintiff's state contract claim because the School is a public entity. *See, e.g.*, *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490 (Ariz. 2007) (applying A.R.S. § 12–821.01). Under the statute, Plaintiff must have "file[d] a claim with persons authorized to accept service for the public entity or employee within 180 days of the accrual of [Plaintiff's] cause of action." *O'Connell v. Smith*, 2009 WL 10673410, at 2 (D. Ariz. June 12, 2009) (citing A.R.S. § 12–821.01(A)). Failure to do so bars such claims. *Salerno v. Espinoza*, 210 Ariz. 586, 588 (Ariz. Ct. App. 2005). Plaintiff admits he did not timely serve the School in compliance with the statute. (Doc. 36-2 at 188). Thus, Plaintiff's breach of contract claim is barred on state statutory grounds.

Regardless, the merits of Plaintiff's breach of contract claim fail because Plaintiff conceded that he was not offered a second employment contract to work as acting superintendent. (Doc. 36-2 at 88–90). Plaintiff also failed to respond to the School's breach of contract arguments in his Response. Thus, it is undisputed that Plaintiff did not have any valid second employment contract to which he can predicate a breach of contract claim.

Therefore, the Court will enter summary judgment in Defendant's favor on

Plaintiff's breach of contract claim.

## IV. Conclusion

As to procedural issues, the Court infers that Plaintiff's eleven day delay in filing his Response was excusable neglect. The Court therefore denies the School's Motion to Strike under Federal Rule of Civil Procedure 6(b).

As to substantive issues, the Court finds the School has met its burden to seek summary judgment on all three of Plaintiff's claims. First, summary judgment is proper as to Plaintiff's Title VII racial discrimination claim because Plaintiff's disparate treatment and hostile work environment theories both fail as a matter of law. Second, summary judgment is proper as to Plaintiff's Title VII retaliation claim because it is undisputed that Plaintiff did not engage in any protective activity. Last, summary judgment is proper as to Plaintiff's breach of contract claim because it is undisputed, and Plaintiff admits, that he was not offered a second employment contract. Moreover, in his Response, Plaintiff does not rebut any of the School's arguments opposing his retaliation and breach of contract claims. The Court will therefore grant the School's Motion for Summary Judgment on Plaintiff's Complaint in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Window Rock Unified School District's Motion to Strike (Doc. 38) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Window Rock Unified School District's Motion for Summary Judgment (Doc. 36) is **GRANTED**.

**IT IS FINALLY ORDERED** that the Clerk of Court shall kindly enter judgment accordingly and terminate this action.

Dated this 10th day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge